**THOMAS D'AMORE**, OSB No. 922735
Email: tom@damorelaw.com
**DOUGLAS OH-KEITH,** OSB No. 064585
Email: doug@damorelaw.com
D'AMORE LAW GROUP, P.C.
4230 Galewood Street, Suite 200
Lake Oswego, OR 97035
Telephone: (503) 222-6333

**RYAN OSTERHOLM** (Pro Hac Vice Forthcoming)
ryan@oftlaw.com
OFT LAW PLLC
730 Second Ave. S., Suite 810
Minneapolis, MN 55402
(888) 828-7087

*Attorneys for Plaintiff Matthew Peterson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| Matthew Peterson,<br><br>      Plaintiff,<br><br>v.<br><br>Thomson International, Inc.,<br><br>      Defendant. | Case No.: 3:20-cv-01284<br><br>COMPLAINT<br><br>Personal Injury; Strict Product Liability, Negligence, Breach of Warranty<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Matthew Peterson, for his claims for relief against Defendant Thomson International, Inc. states as follows:

## **PARTIES**

1. Plaintiff Matthew Peterson is a 36-year-old man who resides in Clackamas, Oregon.

2. Defendant Thomson International Inc. (hereinafter "Thomson International") is a corporation registered in California with its principal place of business in Bakersfield, California.

3. Thomson International manufactures and sells a variety of fresh produce items, including red, yellow, white and sweet yellow onions throughout North America.

## JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and there is complete diversity of the parties.

5. Venue is proper in the District of Oregon under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

## FACTUAL BACKGROUND

### *Salmonella*

6. *Salmonella* is a bacterium that occurs in humans and other animals and is shed in their feces.

7. When *Salmonella* is ingested by humans, it can cause severe gastroenteritis called salmonellosis. Symptoms of salmonellosis include nausea, vomiting, diarrhea, and abdominal pain. Headache, myalgia, and low-grade fever may also accompany salmonellosis.

8. Symptoms typically develop within 6 to 72 hours after contaminated food or water is ingested. Symptoms usually last for several days, but severe cases can last much longer and result in serious medical complications and death.

9. Long-term health issues in individuals who suffer from salmonellosis are well documented, and include reactive arthritis, inflammatory bowel syndrome, and immunological deficiencies.

## The Thomson International Onion Outbreak

10. *Salmonella* is a reportable disease in every state, including Oregon. This means that when an individual tests positive for *Salmonella*, health care providers must notify the appropriate state public health authority.

11. State public health departments, like the Oregon Health Authority Public Health Division (OHA-PHD), work in conjunction with the Centers for Disease Control and Prevention (CDC) and Food and Drug Administration (FDA) to investigate multistate outbreaks of *Salmonella* and other types of foodborne illnesses.

12. After being notified of *Salmonella* illnesses, OHA-PHD can perform a test called whole genome sequencing (WGS) on *Salmonella* isolated from ill individuals. WGS information is used to determine if a common-source *Salmonella* outbreak is occurring.

13. On July 10, 2020, CDC's database for collecting WGS sequences and other data, PulseNet, identified 13 *Salmonella* Newport infections in three different states.

14. Many ill people were identified as part of illness clusters. An illness cluster is defined as two or more people who do not live in the same household who report eating at the same restaurant location, attending a common event, or shopping at the same location of a grocery store in the week before becoming ill.

15. As of July 31, 2020, CDC identified 22 illness clusters in seven states.

16. Information from these clusters showed that many ill people reported eating red onions prior to their illnesses.

17. The traceback information collected from these illness clusters identified Thomson International, Inc. of Bakersfield, CA as a likely source of red onions.

18. Due to the way onions are grown and harvested, other onion types, such as, white, yellow or sweet may also be contaminated.

19. As of July 31, 2020, the total number of people included in the CDC's outbreak tally was 396 spread across 34 states.

20. On August 1, 2020, Thomson International recalled red, yellow, white, and sweet onions shipped from May 1, 2020, through August 1, 2020.

21. The recalled onions were distributed to wholesalers, restaurants, and retail stores in all 50 states, the District of Columbia, and Canada.

22. The onions were distributed in 5 lbs. carton. 10 lbs. carton. 25 lbs. carton. 40 lbs. carton, 50 lbs. carton. bulk, 2 lb. mesh sacks, and 3 lb. mesh sacks, 5 lb. mesh sacks, 10 lb. mesh sacks 25 lbs. mesh sacks, 50 lbs. mesh sacks under the brand names Thomson Premium, TLC Thomson International, Tender Loving Care, El Competitor, Hartley's Best, Onions 52, Majestic, Imperial Fresh, Kroger, Utah Onions and Food Lion.

### Matthew Peterson's Illness

23. Matthew Peterson purchased and consumed red onions from the Fred Meyer store in Oak Grove, Oregon, and from the Milwaukie, Oregon, Wal-Mart, shortly before becoming ill.

24. Plaintiff began feeling ill on July 2, 2020. His first symptoms were fatigue, diarrhea, and stomach pain. Over the next few days, his condition worsened to include fever and bloody stool.

25. Plaintiff sought medical care from Kaiser Sunnyside on July 3, 2020.

26. While at the hospital, Plaintiff underwent invasive testing, provided blood, urine, and stool samples, underwent a CT-scan, and received IV-fluids and pain medication.

27. Plaintiff was discharged from the hospital with a prescription for antibiotics.

28. Plaintiff still suffers from ongoing symptoms of *Salmonella*.

29. Plaintiff learned that he tested positive for *Salmonella* shortly after being discharged from the hospital.

30. Plaintiff was interviewed at length by the OHA-PHD.

31. Upon information and belief, the OHA-PHD and CDC linked Plaintiff to the red onion *Salmonella* Newport outbreak via WGS testing and product exposure to recalled Thomson International onions.

32. As a result of his illness, Plaintiff suffered past and future medical expenses, past and future wage loss, and damages for pain and suffering in an amount to be determined by the jury.

## DAMAGES

33. As a result of his *Salmonella* infection, Plaintiff has suffered significant injuries and damages and required medical treatment.

34. Plaintiff has not yet fully recovered from his *Salmonella* infection and is expected to require future medical care.

35. As a result of the negligent acts of the Defendant which proximately and directly caused the Plaintiff's illness, Plaintiff sustained injuries and damages and has in the past and will in the future incur expenses for medical treatment, hospitalization, physical therapy, medications, and other care related to his injuries and their consequences; as a result, she has in the past and will in the future suffer great physical and mental pain and suffering, emotional distress and loss

of enjoyment of life; as a result, she has in the past and will in the future incur a loss of earnings and of earning capacity; as a result, Plaintiff has been damaged and injured in an amount to be determined at trial, but well in excess of the jurisdictional minimum of this Court.

## CLAIMS

### COUNT ONE

### STRICT PRODUCT LIABILITY AGAINST DEFENDANT THOMSON INTERNATIONAL

36. Plaintiff realleges and incorporates herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

37. At all times relevant hereto, Thomson International was a manufacturer, distributor, and/or seller of a defective product, i.e. red onions contaminated with *Salmonella*.

38. Thomson International placed the defective product on the market.

39. The defective product was sold in an unreasonably dangerous condition.

40. The adulterated food product that Thomson International manufactured, distributed, and/or sold was, at the time it left Thomson International's control, defective and unreasonably dangerous for its ordinary and expected use—raw human consumption—because it contained *Salmonella*, a deadly pathogen.

41. The defective product reached Plaintiff without substantial change in the condition in which the product was sold.

42. The defect is the proximate cause of the Plaintiff's injury.

43. Thomson International is strictly liable for damages caused by the Plaintiff eating adulterated food contaminated with *Salmonella*.

44. As a direct and proximate result of the above-described negligence of Defendant Thomson International, Plaintiff sustained injuries and damages as described in the preceding paragraphs.

## COUNT TWO

## NEGLIGENCE AGAINST DEFENDANT THOMSON INTERNATIONAL

45. Plaintiff realleges and incorporates herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

46. Thomson International owed a duty of care to Plaintiff and other customers to manufacture, distribute, and sell wholesome food products, including red onions.

47. Thomson International owed a duty to Plaintiff to conform to a reasonable standard of conduct for the safe growth, storage, handling, preparation, distribution, and sale of food products.

48. Thomson International breached the duty of care owed to Plaintiff. Thomson International's breach led to an unreasonable and foreseeable risk of foodborne illness to individuals including the Plaintiff.

49. Thomson International had a duty to properly supervise, train, and monitor its employees and to ensure its employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, preparation and sale of similar food products, but Thomson International failed to do so. Failure to conform to this duty is negligence and led to an unreasonable and foreseeable risk of foodborne illness to individuals including the Plaintiff.

50. Thomson International also had a duty to exercise reasonable care when growing its red onions, including keeping the food items from becoming contaminated with fecal material

containing *Salmonella.* Thomson international also had a duty to produce red onions in conformity with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but Thomson International failed to do so. Thomson International negligently breached this duty which led to an unreasonable and foreseeable risk of foodborne illness to individuals including Plaintiff.

51. Thomson International's breach was the proximate cause of injury or damage to Plaintiff.

52. The Plaintiff was a person intended to be protected by safe food handling procedures and practices. As a direct and proximate result of Thomson International's acts and omissions of negligence, the Plaintiff ate food contaminated with *Salmonella* and became ill.

53. As a direct and proximate result of the negligence of Defendant Thomson International, Plaintiff sustained injuries and damages as described in the preceding paragraphs.

## COUNT THREE

**BREACH OF WARRANTY AGAINST DEFENDANT THOMSON INTERNATIONAL**

54. The Plaintiff realleges and incorporates herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

55. By offering red onions for sale to the public, Defendant impliedly warranted that such red onions were safe to eat, that they were not adulterated with *Salmonella, a* deadly pathogen, and that the red onions had been safely grown under sanitary conditions.

56. The Defendant breached the implied warranties about the food they manufactured and sold to Plaintiff, which was consumed by the Plaintiff causing the Plaintiff's injuries and losses.

57. As a direct and proximate result of the above-described actions of Defendant, Plaintiff sustained injuries and damages as described in the preceding paragraphs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays:

1. That the court award Plaintiff judgment against Defendant in such a sum as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the acts and omissions of Defendant, together with interest thereon, as provided by law;

2. That the court award Plaintiff his costs and disbursements incurred herein; and

3. That the Court award such other and further equitable relief as it deems necessary and proper under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury in this matter.

Dated: August 3, 2020

                                  D'AMORE LAW GROUP, P.C.

                                  *s/ Douglas P. Oh-Keith*
                                  Thomas D'Amore, OSB No. 922735
                                  Email: tom@damorelaw.com
                                  Douglas P. Oh-Keith, OSB No. 064585
                                  Email: doug@damorelaw.com
                                  4230 Galewood Street, Suite 200
                                  Lake Oswego, OR 97035
                                  Telephone: 503-222-6333

                                  *Attorneys for Plaintiff Matthew Peterson*

and

                      *s/ Ryan Osterholm*
                     Ryan Osterholm (Pro Hac Vice Forthcoming)
                     OFT LAW PLLC
                     730 2nd Avenue S., Suite 810
                     Minneapolis, MN 55402
                     888-828-7087
                     ryan@oftlaw.com